Veronica A. Williams
P.O. Box 978
South Orange, NJ  07079-0978
Phone 202-486-465 / Fax 888-492-5864
Email StopFraud@vawilliams.com
(Residence: 125 Route 10, Whippany, NJ)
*Plaintiff & Per Se Counsel*

THIS DOCUMENT MAY BE DOWNLOADED AT
http://finfix.org/ExtendedStay-Complaint.pdf

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DR. VERONICA ANN WILLIAMS,<br><br>     Plaintiff, Pro Se<br><br>     v.<br><br>Extended Stay America Inc.<br>ESA Management LLC<br>Cecilia Echegaray, ESA Management LLC<br>Victoria Tramonte, ESA Management LLC<br>Starwood Capital Group<br>Starwood Real Estate Income Trust,<br>Inc. (SREIT)<br>Blackstone Inc.<br>Blackstone Real Estate Income Trust,<br>Inc. (BREIT)<br><br>     Defendants | UNITED STATES FEDERAL COURT<br><br>Civ. No. _____<br><br>COMPLAINT<br><br>AND JURY DEMAND |

I, Veronica Williams, of full age, residing at 125 Route 10, Whippany, NJ 07981, by way of complaint herein says:

**JURISTICTION AND VENUE**

1. Crimes against the Plaintiff occurred in multiple states and the effects extend beyond the State of New Jersey.

2. Plaintiff has previously been denied due process in the New Jersey Courts., therefore, this matter should be heard in the United States District Court of New Jersey.

## PARTIES

3. Dr. Veronica Ann Williams is the Plaintiff in this matter. She has been undergoing a medical and financial recovery as a result of fraud imposed upon her by HSBC and Goldman Sachs. She accepted an offer by Extended Stay America Inc. (ESA) to rent a room for an indefinite amount of time at a rate of $62.99 a day. The room, located near her ACT Inc. company office and medical providers, would be paid for by Absolute Computer Technologies, Inc. dba ACT Inc. as Dr. Williams pursued securing investors and launching services for the firm's new business plan. Dr. Williams relinquished another rental offer for the ESA offer. She continued life sustaining cardiac rehab treatments nearby, continued her doctoral studies at nearby Rutgers University, and continued the development and capital raise for new products and services from ACT Inc.

4. Defendant Extended Stay America Inc. (ESA) presents itself as a low cost, family friendly hotel with spacious suits with full kitchens, free wi-fi that feels like home. In April 2024 the Plaintiff accepted ESA's offer to live in its Extended Stay Parsippany hotel (in Whippany, NJ) ESA was stable since it was owned by Blackstone Real Estate Partners (Blackstone) and Starwood Capital Group. A representative booked the reservation which was confirmed by Dr. Williams before she engaged moving, packers and organizers to facilitate her move.

5. Defendant Cecilia Echegaray, District Manager, ESA Management LLC, met with Dr. Williams after the rate changes that had been corrected by Kathy Hilgert, Task Force Manager, ESA Management LLC, were reneged upon again by ESA. Victoria Tramonte of ESA Management LLC attended the meeting; her presence was explained as only an observer according to Echegaray. Defendant Echegaray failed to respond to Dr. Williams' requests after the meeting.

6. Defendant Victoria Tramonte of ESA Management LLC was hired months after ESA first reneged on the rate. Ms. Tramonte was initially responsive to Dr. Williams and perpetuated her belief that ESA was correcting the problem. Dr. Williams expected that the report she submitted to ESA documenting that repayment of the overcharges would cover her rent through January 2025. A few weeks after the meeting Ms. Tramonte stopped responding to Dr. Williams and was observed avoiding her when she was in the lobby. Dr. Williams would later learn that Ms. Tramonte was on the front line of deceptive acts by ESA.

7. Defendant Starwood Capital Group is a private investment firm that oversees ESA. It is invested in real estate globally totaling over $260 billion of assets.

8. Defendant Blackstone Inc. is a public investment firm that oversees ESA. Blackstone is a global leader in real estate investing generating attractive returns for their investors.

### ALLEGATIONS C O M M O N  TO ALL COUNTS

*Rental Rate Agreement Breach*

9. In April 2024 the Plaintiff chose ESA over another property to live while undergoing cardiac rehab and completing education to recover physically and financially from unavoidable challenges. The ESA representative assured her that the offer was intended for people looking for a safe, comfortable place to live. The reservation agent booked my stay, sent digital confirmation which Dr. Williams confirmed verbally with the hotel staff before retaining the moving company. Upon her arrival, the hotel staff assisted Dr. Williams by showing her multiple rooms and allowing her to select one before her movers arrived.

10. Previous hotel manager changed my reservation, without my knowledge and consent, weeks after I moved in. There were other pricing problems with my reservation which were later

resolved by Kathy Hilbert, ESA Management LLC.

11. As I attended extensive medical treatments and appointments, my focus was on healing and completing my doctoral studies.

12. Just a few weeks before I completed my defense and my committee signed off on dissertation, I learned that ESA had been overcharging my account. I was transitioning from cardiac rehab to physical therapy and other medical treatments and Kathy Hilgert graciously apologized and promised to correct the overcharging and billing errors.

13. As my medical treatments and appointments progressed, I began my next doctoral program. I had completed the business plan for ACT and began preparing for the capital raise. I was on track to a healthy and financial recovery. I would later learn, to my chagrin, that the corrections made my Kathy Hilbert were not maintained.

### *Overcharges Corrected Then Rate Reneged Upon Again*

14. Brought this to the attention of Kathy Hilbert, however, Cathy and Victoria offered to meet with me to reconfirm ESA's commitment and resolve the billing problem. I was reassured by Cathy (4/11/25) that my account would be corrected and I sent proof (4/21/25), based on ESA folios, that my overcharged were over $12,000. Within 2 weeks I realized that Cathy and Victoria were not doing what they promised. On May 5, 2025 I sent a letter reminding them of ESA's commitment while commending ESA's staff. See https://act-it.com/Extended-Stay-OWES-ACT-REFUND_5-5-25.pdf.

15. The deceptive acts only progressed. Rather than reversing the overcharges on my account as ESA had done before, I later learned than 11 days later an eviction action would be filed in the NJ Superior Court. Since that time there have been several acts attempting to

hide the overcharging and deceptively remove me from the property. As my phone calls were no longer returned, I stopped by the front desk and learned that charges had been accruing to my bill and ESA had stopped charging my company credit card. Within 1 hour I made a $3,262.39 payment to pay the overcharges. I then contacted ESA headquarters. The ESA Corporate Hospitality Manager, Tikia Hill, contacted me to let me know that an investigation was underway and assured me that Cathy and Kathy were honorable. I sent a letter to Cathy letting them know that Tiki stood up for them.

### *Depraved Acts to Cover Up Escalate*

16. The deception escalated and was increasingly revealed. Tikia investigation. Eviction served. ESA attorney cancelled complaint but nothing was done to expunge the eviction filing from my record. I approved a representative to contact Victoria, Cathy and Tikia on my behalf since they no longer returned my calls. Unfortunately, these ESA representatives failed to return phone calls from me nor from my representative.

17. The damages from the depraved acts did not stop there. After over 30 years refining a business infrastructure, over 10 years building IP for a new brand, being granted another trademark and a provisional patent, I had reached final negotiations with an investor. It was shortly after the wrongful eviction had been filed with the NJ Court. My investor fell through. Just a few weeks later I was in final contract negotiations with another investor. The second deal also fell through. The angel investor network listing was pulled. Two different one-million-dollar offers were understandably lost after an eviction appeared in Court files.

18. Just a few days ago I learned that ESA had resumed charges to my company's credit card – and had increased our agreed upon rate by 71%!! This was despite owing my company over $10,000 in overcharges.

19. There are lot of people who live at Extended Stay in Whippany. Several of us are battling health challenges. We are a friendly community; during this case I will expose other residents who are paying a comfortable fixed rate without overcharges. Others have left or been forced out after complaining about frequent fire alarms, disruptions and other problems. Nevertheless, the housekeeping, front desk and maintenance staff work hard and many of us spend time together. I have invested a lot to live here and want to live peacefully as the overcharges are paid back and I fulfill my health and financial restoration.

## COUNT I

### BREACH OF CONTRACT

### (*ESA, VICTORIA TRAMONE, CECILIA ECHEGARAY*)

20. Plaintiff incorporates by reference all prior facts and allegations in this Complaint as if set forth here at length again.

21. There exists a contract between ESA and plaintiff. The contract was entered into by ESA and plaintiff on April 19, 2024 and consummated on April 23, 2024.

22. Defendants have provided Plaintiff with inconsistent written, digital documentation indicating that the rate of $62.99 per day would not change.

23. Defendants have deceptively changed the rate, corrected their increases, then repeatedly changed the rate again. The folio was retroactively changed in an alleged attempt to coverup their errors. 41 U.S.C. § 6503 including Subtitle II by:

    a. Failing to uphold their advertised specials

    b. Failed to meet the contract obligations which led to significant consequences for the Plaintiff.

    c. Failed to maintain corrections to restore the agreed upon rate, which further aggravated the significant consequences for the Plaintiff.

24. The foregoing list is a partial list of known violations and is provided in the pleadings to provide notice of the claim for Breach of Contract. Further violations are likely to be discovered during litigation.

25. As a result of the actions of defendants which breached their contract, plaintiff has suffered embarrassment, loss of sleep, depression, other physical symptoms of stress, loss of allocated professional time, loss of investors, and other financial and physical harm.

## COUNT II

### FRAUDS AND SWINDLES

*(ESA, VICTORIA TRAMONE, CECILIA ECHEGARAY)*

26. Plaintiffs incorporate by reference all prior facts and allegations in this Complaint here as if set forth at length again.

27. The defendants' scheme to obtain money by means of false and fraudulent pretenses, representations and promises. Defendants held disingenuous meetings with plaintiff, made retroactive changes to the folio used to track and report charges and receipts, appeared to act in good faith until evidence was received from plaintiff, then stopped all communication.

28. Defendants entered into an agreement for which it had no intention to honor constitutes an unconscionable commercial practice.

29. The defendants ESA notified the Plaintiff that they were conducting an investigation. Notice of investigation was not given until after plaintiff contacted Starwood Capital Group and Blackstone Inc. Plaintiff believed that a fair investigation would be conducted. After accepting extensive evidence in good faith all defendants stopped responding to Plaintiff and to Plaintiff's approved representative.

30. The defendants filed a wrongful eviction order, which was withdrawn by their attorney an hour after Plaintiff was served. The defendants presented subsequent

written threats to evict Plaintiff for the purpose of executing their scheme to threaten Plaintiff.

31. Defendants' continued harassment of the plaintiff, after executing modifications to the agreed upon rate constitutes acts of unconscionable commercial practice.

32. Defendants' public eviction complaint was filed against the Plaintiff. Defendants had regularly charged Plaintiff's company credit card from April 2024 through March 2025. Defendant did not notify Plaintiff that they had continued to overcharge despite evidence provided that a proper refund would not allow charges before October 2025. listing of the plaintiff's home for foreclosure sale, even after its rights to do so were extinguished, constitutes an unconscionable commercial practice.

33. Defendants' retroactively changed folio reports that listed weekly charges to Plaintiff's ESA account and payments by Plaintiff to the ESA account. The folio is ESA's accounting of charges and receipts was used in an attempt to defraud the Plaintiff.

34. Defendants did not deliver the notice of the wrongful eviction from the Superior Court of New Jersey sent via U.S. mail to the Plaintiff at the hotel, until 77 days after it was postmarked on May 30, 2025.

35. Defendants gave Plaintiff subsequent written eviction threats after the first eviction complaint had been filed with the Superior Court of New Jersey. Plaintiff continued to pay although Defendants had not yet refunded the overcharges.

36. The foregoing listing of the defendants' combined acts of unconscionable commercial practice are not exhaustive, and are designed to put defendants on notice that their various actions to threaten the plaintiff were all acts of unconscionable commercial practice.

37. On information and belief, defendants paid other actors, individuals or businesses, to assist them in their unconscionable commercial practices. Those other entities and persons should be identified during discovery.

38. As a result of the defendants' acts of unconscionable commercial practices, plaintiffs have suffered damages and injury.

## COUNT III

### VIOLATION OF ROBINSON PATMAN ACT

*(ESA, VICTORIA TRAMONE, CECILIA ECHEGARAY)*

39. Plaintiffs incorporate by reference all prior facts and allegations in this Complaint here as if set forth at length again.

40. ESA advertised and used booking agents to target consumers seeking living accommodations with full kitchens and that feel like home.

41. ESA discriminated in price between different renters of hotel rooms, that are commodities which are interchangeable and primarily differentiated by price.

42. ESA intended to injure, destroy or prevent competition with other properties providing living accommodations for rent.

43. As a result of the Defendants actions, the living accommodation was misrepresented and Plaintiff was harmed.

44. Plaintiff has suffered damages.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*(ALL DEFENDANTS)*

45. Plaintiff incorporates by reference all prior facts and allegations in this Complaint here as if set forth at length herein.

46. The defendants' actions were intentional, and were designed to cause plaintiff distress.

47. The defendants' actions purposely and recklessly, caused the plaintiff emotional distress so severe that it could be expected to adversely affect physical and mental health.

48. The aim of these actions was to force plaintiff out of her living accommodation with attempts to engage fear through harassment.

49. The aim of these actions was to harass plaintiff and to cause disruption to her business and personal life.

50. Defendants selectively choose residents to inflict distress. There is a community of people who live at ESA. Many of us are enduring health challenges. Preliminary assessment indicates that others pay rents that are affordable.

51. In order to compel Plaintiff to leave her living accommodation, defendants jointly engaged in a series of actions which were designed to make the plaintiff unhappy, cause her distress and force her to give up in an inappropriate war of attrition.

52. As a result of the relentless barrage of harassment by defendants jointly, plaintiff has suffered health problems and has incurred injury.

## COUNT V

## DELIBERATE INDIFFERENCE

*(ALL DEFENDANTS)*

53. Plaintiff incorporates by reference all prior facts and allegations in this Complaint here as if set forth at length herein

54. The defendants' actions were intentional, and were designed to cause plaintiff distress.

55. The aim of these actions was to force plaintiff out of her living accommodations in breach of an agreement to maintain the agreed upon rate.

56. The aim of these actions was to harass plaintiff and to cause disruption to her business and personal life.

57. In order to compel Plaintiff to leave her home, defendants jointly engaged in a series of

actions which were designed to make the plaintiff unhappy, cause her distress and force her to give up in an inappropriate war of attrition.

58. Plaintiff continues medical treatments and appointments. While Defendants continue depraved acts against plaintiff, plaintiff and other residents continue treatments.

59. As a result of the relentless barrage of harassment by defendants jointly, plaintiff's health and financial problems were aggravated and plaintiff has incurred injury.

## COUNT VI

## DEFAMATION OF CHARACTER

### *(ESA, VICTORIA TRAMONE, CECILIA ECHEGARAY)*

60. The defendants pursued an eviction even though the defendants knew that they lacked the legal right to evict or otherwise harass plaintiff.

61. Documents submitted to the Superior Court of New Jersey included a registration card (Exhibit A of Court Notice) that had different terms and conditions than those to which the plaintiff agreed on April 19, 2024 when she accepted the ESA offer and moved in on April 23, 2024.

62. Defendants have presented plaintiff in a false light, resulting in criticism, dishonor and attack to her professional reputation and integrity.

63. Documents submitted to the Superior Court of New Jersey including erroneous, disparaging remarks about the Plaintiff's character.

**WHEREFORE,** plaintiff demands:

| | | |
|---|---|---|
| a. | Compensatory Damages | $8,939.16   AS OF MAY 2025 |
| b. | Punitive Damages | To Be Determined by Jury |
| c. | Statutory Damages | To Be Determined |
| d. | Restitution (add UMT) | $1,002,505 |
| e. | Professional fees and costs | $2,540,811 |
| f. | All other relief which this Court determines to be just and fair | |

### DEMAND FOR TRIAL BY JURY

Defendant herein demands a trial by jury and will not be satisfied with a jury of less than six.

Veronica A. Williams
Plaintiff and Per Se Counsel

Dated: August 13, 2025

By: Dr. Veronica Ann Williams

# Exhibit  A

## TIMELINE

| MONTH | YEAR | ACTION | ACTION | ACTION |
|---|---|---|---|---|
| April | 2024 | Accepted Extended Stay Offer | | |
| April | 2024 | Cardiac Rehab cont'd. | Rutgers DBA cont'd. | ESA accepts ACT |
| | | Med Session Chester started | | |
| May | 2024 | | Medical Continues | Financial Recovery Cont. |
| June | 2024 | | Medical Continues | Financial Recovery Cont. |
| July | 2024 | | Medical Continues | Financial Recovery Cont. |
| Aug | 2024 | Med Session Chester ends | Cardiac Rehab finished | |
| Sept | 2024 | ESA Restores Price (9/18) | ESA recognizes ACT | |
| Oct | 2024 | UMT started | PT Summit started | |
| Nov | 2024 | Rutgers DBA finished | | |
| Dec | 2024 | ESA Deception Continues | Medical Continues | Financial Recovery Cont. |
| Jan | 2025 | ESA Deception Continues | Medical Continues | Financial Recovery Cont. |
| Feb | 2025 | ESA Deception Continues | Medical Continues | Financial Recovery Cont. |
| Mar | 2025 | PT Summit finished (3/25) | | |
| April | 2025 | PT Kessler | | |
| May | 2025 | Paid Hotel Bill (5/21) | Eviction filed (5/16) | ESA investigates (5/24) |
| | | ACT believes ESA HQ (5/30) | Eviction served (5/27) | Eviction stopped (5/27) |
| June | 2025 | Eviction Served | ESA Folio Retroactive Price Changes | Investor Lost (6/11) |
| | | PT Kessler Finished (6/30) | ESA Stops Responding | UMT Finished |
| July | 2025 | Investor Ad Suspended | Investor Lost (8/3) | |
| Aug | 2025 | Eviction letter recv'd.(8/1) | Doubled Rent | USDCNJ Complaint |
| Sept | 2025 | | | |

# EXHIBIT B

## WITNESS LIST

> **WITNESS NAMES WILL BE PROVIDED DURING DISCOVERY**